## 10544

### STATE v. BUICE.

#### (105 S. E. 408.)

CHATTEL MORTGAGES—STATUTE DENOUNCING SALE OF MORTGAGED PROP-
ERTY APPLICABLE TO JUNIOR MORTGAGE.—Cr. Code 1902, sec. 337, pro-
hibiting the sale of property subject to "any mortgage" or other
lien without payment of mortgage debt within 10 days after sale or
disposal, or deposit of amount thereof with clerk of Court," *held*
applicable to a junior mortgage as well as to a senior mortgage.

Before SEASE, J., Spartanburg, Summer term, 1920.
Affirmed.

W. E. Buice indicted for disposing of an automobile
under mortgage, and, upon conviction, appeals.

*Messrs. L. G. Southard* and *C. P. Sims,* for appellant,
cite: *Upon consent by mortgagee to sale being made, he
must look to proceeds of sale:* 111 S. C. 510.

*Mr. I. C. Blackwood, Solicitor,* for the respondent.

December 20, 1920.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE GARY.

The defendant was tried and found guilty, under section
337 of the Criminal Code, which is as follows:

"Any person or persons who shall sell or dispose of any
personal property on which any mortgage or other lien
exists, without the written consent of the mortgagee or
lienee, or the owner or holder of such mortgage or lien, and
shall fail to pay the debt secured by the same within ten days
after such sale or disposal, or shall fail in such time to
deposit the amount of the said debt with the clerk of the
Court of Common Pleas for the county in which the mort-
gage or lien debtor resides, shall be deemed guilty of a mis-
demeanor, and, on conviction thereof, shall be imprisoned
for a term not more than two years, or be fined not more

than five hundred dollars, or both, in the discretion of the Court: *Provided,* That the provisions of this section shall not apply in cases of sales made without knowledge or notice of such mortgage or lien by the person so selling such property. * * *"

The appeal herein is from the sentence imposed upon the appellant.

It appears from the testimony that the defendant ordered three automobile trucks shipped to him. They reached their destination, and the bill of lading with the draft attached was sent to the Bank of Spartanburg. The defendant could not get possession of the trucks until the draft was paid. He prevailed upon Cornelius Otts and another man to indorse his note to the Bank of Greer, for the sum of $6,500, to enable him to pay the draft and get possession of the trucks. As a part of the same transaction, and, before the delivery of the trucks, he executed a mortgage on said trucks in favor of Otts, for the sum mentioned in the note which Otts had indorsed. Otts then assigned the mortgage to the Bank of Greer, with instructions to sell the property if the note was not paid at maturity. The defendant failed to pay the note, and the bank had two of the trucks sold, which brought $4,950, leaving a balance of $381.20, which Otts paid.

The defendant sold the third truck for $1,500 in money, and a Ford automobile truck. He paid the $1,500 to Otts, and delivered the proceeds arising from the sale of the Ford truck to H. E. Ravenel, who, the defendant contends, had a prior mortgage on the trucks, by reason of the following instrument of writing, executed by the defendant on the 16th of January, 1918, and duly recorded:

I, W. E. Buice, am indebted to H. E. Ravenel, in the sum of twenty thousand dollars as below expressed, and to secure the payment of the same, I do hereby convey to him these articles of personal property, to wit: All my stock of

automobiles, trucks, jitneys, tire tubes, tools, parts, accessories, oils, machines, office furniture, and fixtures, and all substitutions or additions from time to time made or to be made, and also all accounts, bills, and notes receivable and bank deposits made or to be made, this mortgage being intended to cover every asset connected with my business, garage, and public auto service, and sale of machines, all of which I agree to keep fully covered by insurance and to assign policy to H. E. Ravenel, etc.

His Honor, the presiding Judge, charged as follows:

"You will notice the statute says 'any mortgage.' It does not say 'prior' mortgage, 'junior' mortgage, and does not say 'senior' mortgage. It does say 'any' mortgage property on which any mortgage or other lien exists. It does not make the disposing of or selling the property an offer. If that were true, it would tie up business. The law will not keep him from selling it at a good price at all. If it did, it would be absurd. What the law is against is the failure, after selling the property at a good price or any price at all, to settle the debt secured by the mortgage, or, if he can't find the mortgagee, deposit with the clerk of the Court the amount unless he has the written consent of the mortgagee or the owner or holder of the lien."

This is a proper construction of the statute. There is no sound reason why a junior mortgagee is not as much entitled to the protection of the statute as a senior mortgagee. Let us suppose that there is a first mortgage on the property amounting to $100, and a second mortgage for the sum of $1,000, and that the mortgagor sells the property for $1,000 out of which he pays $100 to the first mortgagee within 10 days after the sale, but fails to pay the indebtedness secured by the second mortgage. It certainly was not the intention of the legislature to allow such a debtor thus to defeat the spirit as well as the words of the statute.

His Honor, the presiding Judge, also ruled that the Ravenel mortgage had nothing to do with the case; and what we have just said shows that his ruling in this respect is free from error.

Affirmed.

MESSRS JUSTICES HYDRICK, WATTS and FRASER concur.

MR. JUSTICE GAGE did not take part on account of sickness.